UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WESTERN SURETY COMPANY,

        Plaintiff,                            Case No. 13-11063
                                                    Honorable Thomas L. Ludington

v.

TRI-VALLEY LANDSCAPING, INC.,
DAVID W. GILBERT,

        Defendants.
_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Western Surety Company (Western) entered into a general agreement of indemnity with Tri-Valley Landscaping, Inc. (Tri-Valley) and David W. Gilbert (collectively, the Defendants), and then Western issued a number of performance bonds and payment bonds for Tri-Valley. Tri-Valley had been engaged on a number of road-construction projects in Michigan, and Michigan law requires "sufficient security by bond for the payment by the contractor of all subcontractors" on public works such as roadways. *See* Mich. Comp. Laws § 570.101. Unfortunately, things did not go well for Tri-Valley or Gilbert—its President—from that point on.

Tri-Valley did not complete the Michigan roadwork on schedule, and the Michigan Department of Transportation (MDOT) assessed approximately $800,000 in back charges as a result. Because of these fees, Tri-Valley was unable to pay one of its subcontractors, Trinity Highway Products, LLC (Trinity), for its work on the construction projects. So Trinity filed claims in excess of $730,000 against the lien (or payment) bonds issued by Western, as surety, to Tri-Valley.

Tri-Valley defended the litigation on behalf of itself and Western; judgment was entered for Trinity—just shy of $625,000—against Tri-Valley as principal and Western as surety. After the judgment became final, Tri-Valley failed to make any payments to Trinity, and Western was forced to satisfy the judgment. It did so by paying Trinity $600,000.

Western then brought suit, under the general agreement of indemnity, against Tri-Valley to collect the $600,000 it paid to Trinity. Shortly after instituting the lawsuit, Western moved for summary judgment. Based on what follows, that motion will be granted.

# I

Tri-Valley was hired by MDOT to construct cable guardrails on three public-works projects: Mackinac County, MDOT Project No. 49025-102222 (the Mackinac Project); Oakland & Wayne Counties, MDOT Project No. 82293-103104 (the Oakland Project); and Van Buren & Berrien Counties, MDOT Project No. 80023-102146 (the Van Buren Project). *See* Mathews 2013 Aff. ¶ 7, *attached as* Pl.'s Mot. Ex. B, ECF No. 11. And Michigan law requires that "[w]hen public buildings or other public works are about to be built . . . under contract at the expense of the state," it is the duty of those "contracting on behalf of the state . . . to require sufficient security by bond for the payment by the contractor of all subcontractors" involved with the work. Mich. Comp. Laws § 570.101. Because Tri-Valley was the contractor on the three Projects, it was required to secure bonds, which it did.

Western and Gilbert (individually and on behalf of Tri-Valley) had previously entered into a general agreement of indemnity (the Indemnity Agreement) on November 5, 2003. The Indemnity Agreement contemplated "certain bonds, undertakings and other writings obligatory in the nature of a bond," among Western, Gilbert, and Tri-Valley. "[A]s a condition precedent to the execution of any and all such bonds," Western, Gilbert, and Tri-Valley signed the Indemnity

Agreement which provided, in relevant part, that Gilbert and Tri-Valley would hold Western harmless against all claims and liability Western might incur as a result of having executed the bonds:

> [Gilbert and Tri-Valley] will indemnify and save [Western] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Western] may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuances thereof or substitutes therefore, including, but not limited, to fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligations of [Gilbert and/or Tri-Valley] under this Agreement. . . . In the event of payments by [Western], [Gilbert and Tri-Valley] agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of [Gilbert's and Tri-Valley's] liability therefore to [Western].

Indemnity Agreement ¶ 2, *attached as* Pl.'s Mot. Ex. A. Relying on the Indemnity Agreement, Western—as surety—executed three performance bonds and three lien (or payment) bonds for Tri-Valley in August 2008 and February 2009 (one of each for the Mackinac Project, the Oakland Project, and the Van Buren Project). *See* Pl.'s Mot. Exs. C–E. The bonds identified Tri-Valley as principal, Western as surety, and MDOT as obligee.

According to Gilbert and Tri-Valley, MDOT's supplier was "unable to meet delivery deadlines" for the materials necessary to complete the Projects, and thus they were unable to finish their work as required. Much to Gilbert's consternation, MDOT "back-charged" Tri-Valley approximately $800,000 when the work was not completed, notwithstanding the fact that the reason for the delay was the supplier MDOT had required Tri-Valley to use experienced a shortage of the necessary materials. *See* Defs.' Resp. 2, ECF No. 15. Because of the loss of the revenue from MDOT, however, Tri-Valley was unable to pay Trinity for its work on the three Projects.

As a result of Tri-Valley's default, Trinity asserted claims in excess of $730,000 against the lien bonds. When Tri-Valley denied owing Trinity any amount, Trinity instituted an action in the Saginaw County Circuit Court against Tri-Valley, Western as surety, and the lien bonds to recover the money it was owed. Mathews 2013 Aff. ¶ 12. Under the Indemnity Agreement, Gilbert and Tri-Valley agreed to make payments to Western "as soon as liability exists or is asserted against the Company . . . ." Indemnity Agreement ¶ 3. So after Trinity instituted the Saginaw County lawsuit, Western sent a demand letter to Gilbert and Tri-Valley on May 22, 2012.

Trinity's lawsuit culminated with a bench trial over August 21–24 and 29, 2012. The court issued an Opinion and Order on November 2, 2012, concluding that Tri-Valley and Western were jointly and severally liable to Trinity. Judgment was entered on December 13, 2012, establishing that Tri-Valley and Western were jointly and severally liable to Trinity for a total judgment amount of $623,347.36, "plus future interest at the *per diem* rate of $31.3795 (through December 31, 2012)." J. 2, *attached as* Pl.'s Mot. Ex. F. Western satisfied the judgment "in full through the payment of $600,000.00 to Trinity . . . ." Satisfaction of J., *attached as* Pl.'s Mot. Ex. G.

Western filed this action against Tri-Valley and Gilbert to reclaim the $600,000 it paid to Trinity, plus attorney's fees and costs, pursuant to the Indemnity Agreement. According to Western, to date, it has "not received any payment or other security from [Gilbert or Tri-Valley], and [Gilbert and Tri-Valley] have wholly failed and refused to honor their obligations under the Indemnity Agreement." Pl.'s Mot. 6 (citation omitted). On October 30, 2013, Western moved for summary judgment, asserting that there are no genuine issues of material fact concerning whether Gilbert and Tri-Valley are liable under the Indemnity Agreement.

**II**

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**III**

Western asserts that Gilbert and Tri-Valley are liable for the $600,000 it paid to Trinity, $10,415.09 for attorney's fees and costs through August 31, 2013, and "additional costs and attorneys' fees incurred after August 31, 2013." Pl.'s Mot. 7. Gilbert and Tri-Valley do not seriously contest the applicability of summary judgment, but instead rely on this Court's purported discretion to forego the entry of summary judgment even "if it is technically appropriate." Defs.' Resp. 4.

But as Gilbert and Tri-Valley acknowledge, the Sixth Circuit has not expressly adopted this viewpoint, *see id.*, and even those Circuits that have, forego summary judgment where technically appropriate only in "rare instances." *See*, *e.g.*, *Buenrostro v. Collazo*, 973 F.2d 39, 42 n.2 (1st Cir. 1992) (collecting cases). Such "rare instances" involve a "deserving case" that needs "to be more fully developed." *Id.*

Even if the Sixth Circuit were to agree that this Court need not enter summary judgment when technically appropriate in order to allow a deserving case to "more fully" develop, this is not such a case. The facts are clear; Western is entitled to summary judgment, and its motion will be granted.

**A**

First, Gilbert and Tri-Valley weakly argue that Western "has not demonstrated that it actually paid Trinity $600,000 in full satisfaction of the judgment or that the attorney fees and expenses requested were actually incurred and/or paid in connection with Trinity's claim." Pl.'s Resp. 3–4.

So Western included with its reply brief a letter establishing that it delivered to Trinity's counsel three checks "in the amount of $200,000.00 which constitutes full payment of the agreed upon settlement of $600,000.00" along with copies of the actual checks. Pl.'s Reply Ex. B. Together with the Satisfaction of Judgment entered by the Saginaw County Circuit Court and David Mathews's January 10, 2014 affidavit asserting that Western issued three checks to Trinity in the amount of $600,000, *see* Mathews 2014 Aff. ¶ 10, *attached as* Pl.'s Reply Ex. A, this is compelling evidence that Western did in fact pay Trinity $600,000 in full satisfaction of the judgment; evidence that Gilbert and Tri-Valley have not refuted in any way.

Regarding attorney's fees and costs, Western attached to its motion for summary judgment Mark Cunningham's affidavit, an attorney with the law firm of Kerr, Russell and Weber, PLC (Western's counsel). Mr. Cunningham asserts that the invoice attached to his affidavit "provides the actual fees and costs incurred and paid by Western Surety Company regarding the claims by [Trinity] against [Tri-Valley] and [Western] and the actual fees and costs incurred and paid by [Western] in the present action through August 31, 2013." Cunningham

Aff. ¶ 3, *attached as* Pl.'s Mot. Ex. I. The invoices indicate that Western incurred $10,415.09 in costs and fees from March 2012 through June 2013, which includes 51.3 hours of work at $195 per hour (amounting to $10,003.50) and $411.59 in costs. *See* Cunningham Aff. Ex. A. Just over fifty hours is a reasonable amount of work over the course of sixteen months, and $195 per hour is a reasonable cost for Mr. Cunningham's and Michael Carroll's work—both partners at Kerr, Russell and Weber, PLC with many years of experience.

Moreover, Gilbert and Tri-Valley have not even attempted to contest the reasonableness of these fees aside from offering the conclusion that Western "has not demonstrated . . . that the attorney fees and expenses requested were actually incurred and/or paid in connection with Trinity's claim." Defs.' Resp. 3–4. But of course it has; Western offered Mr. Cunningham's affidavit and numerous invoices from Kerr Russell to Western substantiating the requested fees and costs. Thus, Gilbert and Tri-Valley's opening salvo—that Western has not presented evidence to support its payment to Trinity or its request for costs and fees—is without merit.

**B**

Dropping back, Gilbert and Tri-Valley request that the court "deny [Western's] motion without prejudice" if the Court "determines that summary judgment is appropriate." Supporting this argument, Gilbert and Tri-Valley offer cases from the First, Fourth, Fifth, Eight, and Federal Circuits that discuss dismissing a motion for summary judgment without prejudice to allow the development of additional facts in "rare instances." *See Buenrostro*, 973 F.2d at 42 n.2. Gilbert and Tri-Valley further argue that the Sixth Circuit has "stated that an order denying a motion for summary judgment is reviewed only for abuse of discretion, thereby implying approval of the proposition that a district court has discretion to deny a motion for summary judgment." Defs.' Resp. 5.

But the Sixth Circuit has expressly rejected this notion in numerous published opinions. *See*, *e.g.*, *Santiago v. Ringle*, 734 F.3d 585, 589 (6th Cir. 2013) ("A court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks and citation omitted)); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 324 (6th Cir. 2013) (same); *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 994 (6th Cir. 2007) (same). Bound by these decisions, and that fact that Gilbert and Tri-Valley have not demonstrated there exists a genuine dispute as to any material facts in this case, summary judgment will be entered in Western's favor.[1]

## IV

Accordingly, it is **ORDERED** that Western's motion for summary judgment, ECF No. 11, is **GRANTED**.

It is further **ORDERED** that judgment will enter in Western's favor against Gilbert and Tri-Valley, jointly and severally, in the following amounts:

a. $600,000 for payments to Trinity;

b. $10,415.09 in costs, expenses, and attorney's fees incurred through August 31, 2013; and

c. Reasonable costs, expenses, and attorney's fees incurred after August 31, 2013.

Dated: February 26, 2014                 s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

[1] As this is the result, there is no need to reach Western's alternative arguments regarding specific performance of the Indemnity Agreement. *See* Pl.'s Mot. 14–22.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS